# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | **JUDGE RICHARD L. SPEER** |
| Kim Wesley Michael ) | |
| ) | Case No. 09-3258 |
| Debtor(s) ) | |
| ) | (Related Case: 09-34386) |
| Michael Peters ) | |
| Plaintiff(s) ) | |
| v. ) | |
| Kim Wesley Michael ) | |
| Defendant(s) ) | |

### **DECISION AND ORDER**

This cause comes before the Court after a Trial on the Plaintiff's Complaint Objecting to Discharge pursuant to 11 U.S.C. § 727, and to Determine Dischargeability of Debt under 11 U.S.C. § 523. (Doc. No. 1). At the Trial, the Plaintiff, during his case-in-chief, addressed solely that portion of his complaint concerning a denial of discharge as provided in § 727. Specifically, the evidence put forth by the Plaintiff sought to have the Defendant's discharge denied for two reasons specified by statute: (1) § 727(a)(3), for failure to keep adequate records; and (2) § 727(a)(4), for knowingly making false statements in documents filed with the Court.

At the conclusion of the Trial, the Court deferred ruling on the matter so as to afford time to thoroughly review and consider the evidence presented by the Parties. The Court has now had this

opportunity, and finds, for the reasons set forth in this Decision, that the Defendant should be Denied a Discharge in accordance with § 727(a)(3) for failing to keep adequate business records.

## FACTS

For more than 30 years, the Defendant, Kim Michael, has been an owner and/or a principal party in at least 12 business ventures. In these ventures, the Defendant has, among other roles, operated as a sales manager, free lance graphic designer, insurance salesman and concert promoter.

Early in his business career, the Defendant partnered with his brother, and operated a sign manufacturing company. For a time, this business experienced growth, and as the business grew, the Defendant, who originally concentrated on the 'graphic end' of the business, devoted more time to improving sales. With the business, however, the Defendant was not initially involved in any record keeping and, despite being an owner, generally did not have any in-depth knowledge as to the financial operation and condition of the business. Instead, the Defendant's brother was charged with matters concerning bookkeeping and managing the day-to-day operation of the business. (Pl. Ex. 18).

At some point, the sign manufacturing company owned by the Defendant and his brother began to experience financial difficulties. During the same period of time, the Defendant's brother also left the company. After his brother's departure, the Defendant discovered that record keeping and general matters related to the management of the business, such as the remittance of withholding taxes, were in disarray. Because of this, the Defendant stated that he came to recognize the need, and subsequently acquired the knowledge, to do basic accounting and bookkeeping tasks so as to keep track of his business matters.

In 2005, or thereabouts, the Defendant destroyed substantially all of the records related to his business ventures up to that point in time. Around this time period of time, the Defendant, although

Page 2

Michael Peters v. Kim Wesley Michael
Case No. 09-3258

having completed a federal tax return for the year 2007, also ceased filing tax returns. (Pl. Ex. 17). Since 2005, the Defendant has been involved in at least six business enterprises:

      (1) Performance Marketing, LLC, (Pl. Ex. 7);

      (2) CRMG, LLC, (Pl. Ex. 9);

      (3) Dotcomdiscountcard, LLC, (Pl. Ex. 11);

      (4) www.4EquityNow.com, (Pl. Ex. 12);

      (5) Funding Spring LLC, (Pl. Ex. 13); and

      (6) bSecured Solutions, (Pl. Ex. 2).

At the present, however, the Defendant is not involved in any of these businesses as going concerns.

For the six businesses the Defendant has operated since 2005, a few matters stand out. First, in 2006, the Defendant represented that he was taking draws from the second business, CRMG, of approximately $10,000.00 per month. Second, the Defendant also represented in a rental application that from the sixth business, bSecured Solutions, he was paid in 2007 an annual income in excess of $100,000.00 (Pl. Ex. 10).

Finally, as an overall observation, the evidence produced in this case shows that, as late as 2008, transactions in the form of loans, remittances, and/or the dispensation of compensation were occurring with one or more of the Defendant's business enterprises. (Pl. Ex. 17). For example, with regards to the third business, Dotcomdiscountcard, the Defendant received in 2008 approximately $12,000.00. *Id.* The exact scope of the Defendant's business transactions, however, are hard to follow, with the only record of the transactions coming from oral testimony given by the Defendant in connection with various judicial proceedings.

Page 3

Michael Peters v. Kim Wesley Michael
Case No. 09-3258

The connection between the Parties in this case concerns events surrounding the last business, "bSecured Solutions." These events began in February of 2007, when the Defendant borrowed from the Plaintiff the sum of $63,777.00 for the purpose of financing "bSecured Solutions." A promissory note was executed memorializing this transaction. Among its terms, the note provided that it would be fully repaid within one year, with the Defendant agreeing to repay, in consideration for the extension of credit, a sum not to exceed $93,376.00. (Doc. No. 1, Ex. A). Ultimately, however, the Defendant defaulted on his obligation under the note, repaying the Plaintiff only $10,000.00 of the amount owed.

On June 30, 2009, the Defendant filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Although required to be fully disclosed in the statement of financial affairs filed with his petition, the Defendant only provided a partial list of those business interests he maintained during the six years immediately preceding the filing of his case.[1]

At the time he sought bankruptcy relief, the Defendant, although exploring possible opportunities, was neither involved in any business enterprise, nor employed. At the time of the Trial held in this matter, this state of affairs had not changed. As a result, the Defendant presently has no source of income, and related that he is dependent on gifts and loans made by friends for his support.

---

[1]
A debtor is required to file a statement of financial affairs. 11 U.S.C. § 521(a)(1)(B)(iii). Question 18(a), on the statement of financial affairs, sets forth in relevant part:

If the debtor is an individual, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full-or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.

Page 4

The Defendant has also been forced to downsize his living accommodations, and now lives in small one bedroom apartment.

## DISCUSSION

The matter before the Court concerns the Plaintiff's Complaint Objecting to Discharge. A determination concerning an objection to discharge is deemed to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

A prime policy goal of the Bankruptcy Code is to afford a debtor a fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). The bankruptcy discharge serves as a cornerstone of this policy. The importance attached to the fresh-start policy of the Bankruptcy Code is expressed in § 727(a) which affords a debtor a presumption that a discharge will be entered in their favor by first providing in its introductory clause that the "court shall grant the debtor a discharge, unless . . . ." *McVay v. Phouminh (In re Phouminh)*, 339 B.R. 231, 247 (Bankr. D.Colo. 2005).

The Code, however, also recognizes that a bankruptcy discharge, whose effect is to bar creditors from enforcing their rights under state law, is an extraordinary remedy, and carries with it certain duties and obligations. Thus, while a debtor is afforded a presumption that a discharge will be entered, § 727(a) also contains a number provisions, following its introductory clause, all of which have one thing in common: Each provision provides a basis upon which a debtor may be denied the benefits of a bankruptcy discharge. It is well-established in this regard that a debtor has no constitutionally protected right to bankruptcy protection and that, under certain conditions, a debtor may be denied the benefits of a bankruptcy discharge. *United States v. Kras*, 409 U.S. 434, 445-446, 93 S.Ct. 631, 637-638, 34 L.Ed.2d 626 (1973).

Page 5

Michael Peters v. Kim Wesley Michael
Case No. 09-3258

The purpose served by denying a debtor a discharge is to protect the integrity of the bankruptcy system by limiting the benefits of a discharge in bankruptcy to only those debtors who are fully cooperative and honest. *U.S. Trustee v. Halishak (In re Halishak)*, 337 B.R. 620, 624 (Bankr. N.D.Ohio 2005). In this way, a debtor must accept not only the benefits afforded by the Bankruptcy Code, but also its burdens. Among these burdens, a debtor is required to be absolutely transparent in all matters regarding their financial affairs. *See* FED.R.BANK.P. 4002

The grounds to deny a debtor's discharge are listed in paragraphs (1) through (12) of § 727(a). These grounds are exclusive. *Bernstein v. Zeiss, Inc. (In re Bernstein)*, 78 B.R. 619, 622 (S.D.Fla.1987). Thus, a debtor's discharge may only be denied if at least one of those limitations on discharge expressed in § 727(a) is shown to exist. For this, the burden is placed upon the party objecting to discharge to establish, by at least a preponderance of the evidence, that a debtor should be denied a discharge. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); FED.R.BANK.P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.").

In support of his burden, the Plaintiff first cited to § 727(a)(3) as a basis to have the Defendant's discharge denied. This provision provides:

(a) The court shall grant the debtor a discharge, unless–

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

Page 6

Michael Peters v. Kim Wesley Michael
Case No. 09-3258

In order to sustain an action to deny a debtor's discharge under § 727(a)(3), one of two conditions must be first shown to exist: (1) the debtor failed to keep or preserve any recorded information, including books, documents, records, and papers; or (2) the debtor, or someone acting for the debtor, committed an act of destruction, mutilation, falsification, or concealment of any recorded information, including books, documents, records, and papers. It is the Plaintiff's position that both of these conditions are present, with the Plaintiff stating to the Court that:

> the Defendant has failed to adequately keep or maintain records of income and expenses, capital investment and other business transactions for his 9 business ventures within six years of filing his bankruptcy petition. Specifically, the evidence will establish that Defendant threw away his business records prior to 2005 or 2006, and that he has not kept business bookkeeping records ever since.

(Doc. No. 40, at pg. 2).

After the party objecting to discharge has shown that either or both of the initial conditions to sustain an action under § 727(a)(3) are met, the objecting party must then go on to show that the lack of financial records makes it impossible to ascertain the debtor's financial condition. Although in most instances it may be assumed that this element is met because, unless financial records come from a third party, there will likely exists no records from which a debtor's financial condition may be ascertained. *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 665 (Bankr. S.D.N.Y. 2008).

Once these mentioned elements of a § 727(a)(3) action are established, the party objecting to discharge has sustained their evidentiary burden. A complaint brought under § 727(a)(3), however, may still be defeated if it can be shown that the debtor's "act or failure to act was justified under all of the circumstances of the case[.]" The burden to make this showing falls upon the debtor. *Turoczy Bonding Company v. Strbac (In re Strbac)*, 235 B.R. 880, 883 (6th Cir. B.A.P. 1999).

Page 7

For the second of the two initial conditions to sustain an action under § 727(a)(3), it is the Plaintiff's position that the Defendant improperly destroyed his business records, having thrown the records away in 2005. And as a factual matter, the Defendant readily admitted that he threw away all the financial records he maintained up to the year 2005. Moreover, the destruction of such records necessarily makes it impossible to adequately ascertain the Defendant's financial condition prior to 2005. On this basis, therefore, a *prima facie* case exists for denying the Defendant's discharge under § 727(a)(3).

Yet, insofar as it concerns the Defendant's destruction of his business records, the Court is not convinced that, on this particular basis, a denial of the Defendant's discharge is warranted. Old records are often destroyed. With this reality, § 727(a)(3) does not impose upon a debtor an obligation to keep and preserve financial records forever. Instead, § 727(a)(3) only imposes upon a debtor a duty to keep and preserve financial records for a reasonable period of time, with two years having been used as a minimum point of reference. *Menotte v. Hahn (In re Hahn)*, 362 B.R. 542, 548 (Bankr. S.D.Fla. 2007), citing *Losinski v. Losinski (In re Losinski)*, 80 B.R. 464, 474 (Bankr. D.Minn.1987).

In this matter, the Defendant destroyed his business records in 2005; the Defendant, however, did not file for bankruptcy until 2009. Hence, approximately four years separate the Defendant's destruction of his business records with the filing of his bankruptcy petition. The Court is not disposed to find such an interval of time to be unreasonable and, as such, the Defendant's actions may be viewed as justified under all of the circumstances of this case. A couple of points in this regard stand out.

To begin with, the relationship between the Parties, at least insofar as it concerns this matter, did not come into existence until 2007, two years after the Defendant destroyed his business records. As a result, the Defendant's destruction of his business records did not deprive the Plaintiff of any

Page 8

information upon which his decision to extend credit to the Defendant could have been based. There is also no evidence that the Defendant destroyed his records in bad faith. Nor was any evidence introduced suggesting that other similarly situated debtors would not have destroyed the type of business records thrown away by the Defendant.

This, however, does not mean that the Defendant is entitled to have a discharge granted in his favor. The integrity of the bankruptcy process rests on the full, complete and honest disclosure by a debtor of their relevant financial information. *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 427 (Bankr. N.D.Ohio 2004). To this end, the Bankruptcy Code not only proscribes acts such as the concealment and destruction of business records, but it also imposes a positive duty on a debtor to keep and maintain books and records related to their financial affairs. *The Cadle Company v. Hughes (In re Hughes)*, 354 B.R. 801, 809 (Bankr. N.D.Tex. 2006). Thus, the alternative condition, *supra*, upon which a denial of a debtor's discharge under § 727(a)(3) may be based: the failure to adequately keep and preserve business records when such a failure makes it impossible to ascertain the debtor's financial condition and the debtor is unable to sufficiently justify the lack of records.

Whether a debtor fails to keep and preserve his financial information is a question of adequacy and reasonableness, and is ultimately one of quality, not quantity. It is ascertained on a case-by-case basis, with the pertinent inquiry being whether the financial information provides "enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Turoczy Bonding Company v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (6th Cir. B.A.P. 1999). Relevant considerations to make this determination may include a debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice. *Id.*

Page 9

Michael Peters v. Kim Wesley Michael
Case No. 09-3258

The type and nature of the debts will also play an important part in ascertaining the sufficiency of the debtor's financial records. Thus, for example, a debtor with primarily consumer debts will generally not be held to the same standard as compared with a debtor with mostly business debts. *Schechter v. Hansen (In re Hansen)*, 325 B.R. 746, 762 (Bankr. N.D.Ill. 2005). Moreover, for business debts, the sufficiency of a debtor's records and financial information will be examined in light of the size, volume, and/or complexity of the debtor's business. *Johnson v. Greene (In re Greene)*, 340 B.R. 93, 98-99 (Bankr. M.D.Fla. 2006).

In bringing these facets together, it has been held that when a debtor owns and/or controls numerous business entities and engages in substantial financial transactions, an absence of recorded information related to those entities and transactions establishes a *prima facie* case for an action to deny discharge under § 727(a)(3). *Caneva v. Sun Communities Oper. Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 762 (9th Cir. 2008). Given the importance business records play in the bankruptcy process, the Court cannot find any fault with such an approach. Any party operating a business would naturally want to keep records of their financial transactions and dealings – if, for nothing else, it would help to ascertain the profitability of the business. As a result, when a person who recently maintained multiple business interests fails to produce any meaningful financial records, a natural inference arises that the person is attempting to obfuscate his financial dealings.

In applying this approach, it must be presumed that the Defendant failed to properly keep and adequately preserve recorded information related to his business endeavors occurring after 2005. With the exception of a vehicle registration certificate, and a copy of a federal 2007 tax return, the record in this case is devoid of any written records concerning financial transactions related to the Defendant's recent business ventures. (Doc. No. 47, Ex. 3). For example, no check registers were provided; as well, the Defendant could not even produce a simple accounting ledger of any kind regarding any of his businesses. Also problematic, the Defendant, despite having some source of income, has not filed tax returns for many or all of the most recent tax years, extending back to 2005,

Page 10

Michael Peters v. Kim Wesley Michael
Case No. 09-3258

an omission which elicited this response from one bankruptcy court: "a debtor's failure to file timely tax returns – especially for several years in a row – is a blatant example of a failure to maintain adequate records." *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 858 (Bankr. N.D.Tex. 2003), *judgment aff'd*, 299 B.R. 810 (N.D. Tex. 2003), *aff'd*, 108 Fed. Appx. 993 (5th Cir. 2004).

Secondly, the Defendant's almost complete lack of financial records cannot be reconciled with his business experience and sophistication, along with the size, number and complexity of his recent business enterprises. In sum, the Defendant, a business man, will be held to a much higher standard than an average consumer debtor when it comes to record keeping. In this regard, a number of points stand out.

To start, the Defendant has played a primary role in at least 12 business enterprises. Moreover, at least six of the businesses have been operated in the past five years. Although each business varied in size and scope, the evidence showed that the Defendant has, through his business endeavors, maintained a payroll. A recent business endeavor of the Defendant was also sufficient in size to allow him to take draws from the business of $10,000.00 per month.

Considering, therefore, the extent of his business interests, it becomes unassailable that the Defendant has an appreciable degree of sophistication in matters related to business, and thus had to know of the importance and need to keep and preserve accurate business records. In fact, the Defendant admitted so much, acknowledging that, because of problems which arose earlier in his business career, he came to recognize the need, and subsequently acquired the knowledge, to do basic accounting and bookkeeping tasks so as to keep track of his business matters.

Yet, despite having recently engaged in numerous business ventures, with at least some of the business ventures being beyond nominal in scope and size, and despite knowing the importance of record keeping, the Defendant was unable to produce any substantive records from which his

Page 11

recent business transactions might be ascertained. In turn, the Defendant's inability to produce financial records related to his businesses makes it impossible to ascertain, with any degree of accuracy, the Defendant's financial condition, thereby establishing a *prima facie* case for a denial of discharge under § 727(a)(3).

As a justification for his failure to keep adequate business records, the Defendant raised a number of points. For purposes of § 727(a)(3), however, none of these points rise to the level to justify the Defendant's failure to keep and maintain adequate business records. The reasons for this are now explained.

The Defendant's first point in opposition centers on his assertion that he lacked any intent to cause harm, whether to the Plaintiff or any other creditors. Similarly, regarding his lack of any wrongful intent, the Defendant addressed his failure to file tax returns, explaining to the Court that it was his understanding, albeit perhaps not correct, that he was not under a legal obligation to file tax returns because of his lack of taxable income. Pointing to his sparse living arrangements, the Defendant also explained that, due to his present financial hardship, detailed record keeping was not a priority. Moreover, to cushion this deficiency, and as a substitute for recorded financial information, the Defendant explained that he has stood ready to cooperate with the Plaintiff by answering any questions necessary to reconstruct his financial history.

The initial points raised, which centered on his intent, are not relevant to the disposition of this case. It is established that to sustain a finding of nondischargeability under § 727(a)(3), an intent on the part of a debtor to hide or conceal financial information is not necessary. *Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 70 (1st Cir. 2004). Nor, is it necessary to show on the part of the debtor an intent to defraud a particular creditor or trustee. *Id.* Instead, the test for determining whether a debtor has adequately justified the inadequacy or lack of financial records is an objective one, focusing on whether others in like circumstances would ordinarily keep financial records.

Page 12

Michael Peters v. Kim Wesley Michael
Case No. 09-3258

*Peterson v. Scott*, 209 B.R. 451 (N.D. Ill. 1997), *decision rev'd on other grounds*, 172 F.3d 959 (7th Cir. 1999).

    Consequently, even assuming that the Defendant did not, by his lack of record keeping, intend to cause any harm, his actual motives are not ultimately relevant. By not producing records of his recent business enterprises, records which a debtor in a like position would have been able to produce, § 727(a)(3) stands in this case as a bar to the entry of a discharge. The Defendant's position that he was making a good faith effort to reconstruct his financial history does not change this result.

    First, as an initial point, the Court found the Defendant's oral account of his past financial dealings to be confusing. The following testimony, as taken from an earlier debtor's examination of the Defendant and offered into evidence, illustrates:

| | |
|---|---|
| Question: | January 28th, 2008, you received $6,000. Im sorry, a total of $11,000 that was deposited to your account. Do you know here that would have come from? |
| Answer: | Well, actually the timing – What was the other one? $6,000 something you said? |
| Question: | $6,000 and – plus $5,000. |
| Answer: | That was in March? |
| Question: | This is in January |
| Answer: | But there was another one earlier. |
| Question: | First one I mentioned was March, the $6,800. |
| Answer: | Let's flop those. January, that's closer to the $12,000 figure I was talking about, so that's when I must have been Dot Com Discount Card. Started Dot Com Discount Card in January of 2007. January was probably the money from Larry. |
| Question: | The $12,000 you mentioned? |
| Answer: | That's correct, because I wondered why it wasn't closer to that. |
| Question: | So now – |
| Answer: | Now March I don't know other than the fact that I know that it's a loan because I didn't have any other business that I did. |

Page 13

> Question: So you have no income, but you can't remember where you got $6,800 in March?
> Answer: Correct. And what are – Does it have a date on there?
> Question: March 20th $6,800 in cash.
> Answer: I remember the time, but I don't remember any particular event except that it would have been again probably something to do with Dot Com Discount Card, and a very good chance that would have been from Larry. That would not have been from Eugene. It wasn't from bSecured.

What is particularly noticeable with regards to this testimony, as well as his Trial testimony, was the Defendant's inability to give clear answers, with the Defendant, who is supposed to be answering the questions, positing many of the questions.

The confusion surrounding the Defendant's financial affairs also extended directly to his bankruptcy petition, with the Defendant only providing a partial list of those business interests he maintained during the six years immediately preceding the filing of his case. In this way, one of the functions served by § 727(a)(3) is to ensure that "[c]reditors are not required to risk having the debtor withhold or conceal assets under the cover of a chaotic or incomplete set of books or records." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir. 1992).

In any event, a creditor or trustee is not required to rely on a debtor's unsubstantiated oral testimony when investigating a debtor's financial affairs. *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 228 (W.D.Mich.1997). By its terms, § 727(a)(3) requires the production of written records. As stated by Bankruptcy Appellate Panel for the Sixth Circuit in *In re Strbac*:

> Bankruptcy Code does not impose upon creditors the obligation to take debtor's word that his/her income was insubstantial; rather, creditors are entitled to see for themselves from contemporaneous, accurate and reliable records that debtor is required to maintain and produce.

Michael Peters v. Kim Wesley Michael
Case No. 09-3258

235 B.R. at 885. It is also a debtor's burden to produce the records. A creditor, even if they have the power to obtain the records, such as through a subpoena, is not under an obligation to do so. *Structured Asset Servs., LLC v. Self (In re Self)*, 325 B.R. 224, 244 (Bankr. N.D.Ill. 2005).

Finally, while the Defendant has undoubtably experienced financial troubles, the Defendant's financial difficulties cannot relieve him of his duty to keep, maintain and produce adequate records of his recent business activities. All debtors in bankruptcy have, by definition, experienced financial troubles. Thus, accepting the Defendant's argument would undermine another of the basic functions served by § 727(a)(3): to relieve the trustee and creditors of the burden to accurately ascertain a debtor's financial history and instead place it on the party with the most complete and intimate knowledge of such information, the debtor. *See Neary v. Leech (In re Leech)*, 408 B.R. 222, 228 (Bankr. E.D.Wis. 2009).

In addition, nothing in this case suggests that the Defendant's lack of financial records stemmed from events totally beyond his control – a common theme in many situations where a viable justification for a failure to keep or preserve records has been found to exist. *See, e.g., Menotte v. Moore (In re Moore)*, 375 B.R. 696, 702-03 (Bankr. S.D.Fla. 2007). For example, the Defendant did not produce any evidence of theft, fire or other natural disaster. Instead, the Defendant merely pled that his financial difficulties have made record keeping more difficult.

In conclusion, the Court finds that the Plaintiff has sustained his burden of showing that the Defendant, having failed to keep and preserve adequate financial information, is not entitled to have a discharge granted pursuant to 11 U.S.C. § 727(a)(3). This decision is not made lightly. But as a part of the Bankruptcy Code, as enacted by the Congress of the United States, a debtor is under a duty to keep and maintain adequate business records. The Defendant, given his particular circumstances, failed to do this and was unable to offer a viable justification for his omission.

Page 15

Michael Peters v. Kim Wesley Michael
Case No. 09-3258

      In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

      Accordingly, it is

      **ORDERED** that, pursuant to 11 U.S.C. § 727(a)(3), the Defendant-Debtor, Kim Wesley Michael, is hereby denied a discharge.

      Dated: July 23, 2010

      _____
      Richard L. Speer
      United States
      Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re  Kim Wesley Michael (Debtor) | ) | HONORABLE RICHARD L. SPEER |
| | ) | |
| | ) | |
| Michael Peters (Plaintiff) | | |
| Vs | | |
| Kim Wesley Michael | ) | |
| | ) | |
| Debtor(s) | ) | Case No.  09-3258 |
| | ) | |
| | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

This is to certify that a copy of the Decision and Order was sent by ordinary mail this 23rd day of July 2010 to the following parties:

Kim Wesley Michael
505 Jefferson Ave
#1002
Toledo, OH 43605

Michael Peters
3119 Estuary Place
Maumee, OH 43537

Jeffrey M Kerscher
1090 W South Boundary St
Suite 150
Perrysburg, OH 43551

Dated:  7/23/10

/s/Dawn M. Serna-Gensch

Deputy Clerk, U.S. Bankruptcy Court